UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEFFREY TODD BURTS, | ) | 1:07-CV-00451JMD HC |
| | ) | |
| Petitioner, | ) | ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| BEN CURRY, | ) | |
| | ) | |
| Respondent. | ) | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner Jeffrey Todd Burts ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c)(1), by order dated August 30, 2007, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of California Department of Corrections and Rehabilitation pursuant to a judgment of the Fresno County Superior Court. (Pet. at -1-2.) Petitioner was convicted by a jury of spousal abuse (Cal. Penal Code § 273.5(a)), pandering (Cal. Penal Code § 266i(a)(2)), making criminal threats (Cal. Penal Code § 422), and battery (Cal. Penal Code § 243(e)). (Answer at 1). Petitioner received a sentence of nine years and eight months. (Pet. at 2; Answer at 1-2).

Petitioner timely appealed his conviction to the California Court of Appeal. On January 11, 2006, the appellate court affirmed Petitioner's conviction in a reasoned decision. (Pet. at 2-3;

1  Answer at 2).

2  On February 24, 2006, Petitioner filed an application with the California Supreme Court to

3  review the Court of Appeal's decision. (Pet. at 3). The California Supreme Court summarily denied

4  the petition on March 29, 2006. (Pet. at 3; Answer at 2.)

5  On March 22, 2007 Petitioner filed the instant petition in this Court, raising the same claim

6  Petitioner had previously brought before the state courts. The petitioner's sole ground for relief

7  alleges that the trial court's admission of prior uncharged offenses denied Petitioner's his right to due

8  process of the law, under the Fourteenth Amendment. (Pet. at 6).

9  On July 20, 2007, Respondent filed an answer to the petition.

## FACTUAL BACKGROUND[1]

[Petitioner] began dating Cynthia G. (C.G.) near the end of 2003. Prior to their relationship C.G. was a drug user and prostitute. C.G. and [Petitioner] lived together at the home of [Petitioner]'s mother. On February 14, 2004, their relationship turned violent.

**I.    Count 1**

[Petitioner] and C.G. began to argue inside a store. She tried to leave on foot, but [Petitioner] convinced her to get into his car. C.G. tried to get out on the drive home, but [Petitioner] grabbed her wrist. In the ensuing struggle, [Petitioner] injured a recent surgical wound. C.G. ceased struggling because [Petitioner] told her he "ripped [his] stitches open." Once home, they resumed arguing and C.G. threatened to leave again. [Petitioner] tried to stop her from leaving and struck her repeatedly with his walking cane. C.G. fell to the ground where [Petitioner] punched and kicked her, cutting her temple. She kicked and screamed for help before running away. C.G. returned about five minutes later to bandage her wound but did not seek medical attention.

**II.   Count 2**

In May of 2004, [Petitioner] and C.G. were at home when [Petitioner] demanded that C.G. work as a prostitute. C.G. angrily refused and [Petitioner] pushed C.G. into a door giving her a black eye.

**III.  Counts 3 and 5**

On June 6, 2004, while [Petitioner] and C.G. were at home, [Petitioner] instructed C.G. to "work the streets" as a prostitute. C.G., pregnant with appellant's child, reiterated that she was not "going to go do [that] anymore." She left on foot for her mother's house. She noticed [Petitioner] following in his car and tried to evade him. When C.G. noticed [Petitioner] exit his car, she turned down a side street to get away. As he approached, C.G. ran into the driveway of a residence and yelled for help. [Petitioner] caught up to C.G., punched her in the jaw and ran away. Residents of the home witnessed much of the altercation and heard her scream. They called 911 for C.G.

---

[1] These facts are derived from the factual summary contained in the California Court of Appeal's opinion issued on January 11, 2006. (Lodged Doc. 1). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

### IV. Count 4

Later that evening, a fearful C.G. again called 911.  While C.G. spoke to the 911 dispatcher, [Petitioner] called and she switched over to the second phone line to speak with him.  [Petitioner], angry that she had called the police earlier, told her he would "have [her] head."  C.G. was frightened by the threat and believed [Petitioner] would hurt her because of previous conversations with her sister, Lori G. (L.G.)  L.G. previously dated [Petitioner].  After their relationship ended, L.G. told C.G. [Petitioner] had held her captive, hit her, and burned her.

### V. Prior uncharged offenses

A. *Renae M.*

In July of 1996, Renae M. (R.M.) was a prostitute living in a motel room with her four children. She was a crack cocaine user. [Petitioner] met her on the street. She got into his car when he offered to feed her and help her "get off the streets." [Petitioner] invited R.M. and her children to live with him so she could save money. [Petitioner] and R.M. had an intimate relationship.  However, [Petitioner] encouraged R.M. to continue working as a prostitute.  [Petitioner] kept all the money she made. He became jealous, possessive and only allowed R.M. to go outside to work as a prostitute.

On July 27, 1996, R.M. and [Petitioner] had an argument in the kitchen.  R.M. was holding her 14-month-old baby when [Petitioner] struck her in the face, knocking her to the ground.  She had injuries to her face and her baby required four stitches to his chin.  When she tried to get away, he pushed her down the steps.  She went to a store for help and asked them to call 911.

B. *Michael M.*

In 1996, Michael M. (M.M.), a 19-year-old female, moved out of a group home to live with some friends, one of whom was in a dating relationship with [Petitioner].  M.M. was acquainted with [Petitioner] and accepted a ride from him. Instead of her destination, however, he drove to his grandparents' home while they were out of town. [Petitioner] forced M.M. inside the house, struck her repeatedly, threatened her, ordered her to disrobe, and beat her with a belt.  Later, [Petitioner] took M.M. to a motel where he held her captive for two weeks.  During this time, [Petitioner] threatened, beat, and raped her.  Then [Petitioner] took M.M. to an area known for prostitution and instructed her how to be a prostitute.  M.M. pretended to cooperate and later escaped. Fearful of [Petitioner], M.M. did not report what happened until 1999.

C. *Renee S. and Lori G.*

On August 23, 2002, Renee S. (R.S.), a drug user, was living in a motor home. She was acquainted with [Petitioner], who offered to give her gas money in exchange for a ride to collect on a debt.  While driving, [Petitioner] spotted Lori G. (L.G.) and instructed R.S. to pull over because L.G. owed him money.  After an angry confrontation, L.G. entered the vehicle with [Petitioner] and they drove off.  They picked up another acquaintance of [Petitioner] and used drugs.  After [Petitioner] gave drugs to R.S., his demeanor changed from friendly to hostile.  He threatened to hurt R.S. if she did not pay him for the drugs she used.  Whenever they stopped, [Petitioner] took R.S.'s keys and cell phone and threatened her and her mother if she tried to get away.

[Petitioner] forced R.S. and L.G. to engage in prostitution so they could get money for him.  When R.S. refused, [Petitioner] struck her in the head.  [Petitioner] ordered R.S. to drive to Belmont Avenue, a location known for prostitution. [Petitioner] instructed R.S. and L.G. how to sell their bodies.  R.S. and L.G. pretended to be prostitutes at this location.  When R.S. and L.G. returned without any money, [Petitioner] hit them both.  Then [Petitioner] instructed them to drive to a farm labor camp in Selma for the same purpose, but no one was there.  While R.S. drove them back to town she could hear [Petitioner] repeatedly hit L.G. in the back of the vehicle. R.S. and L.G. were rescued when the police entered the parked vehicle.

At trial, M.M., R.S., and R.M. testified about their experiences. L.G. avoided

process and was not available to testify. C.G., R.S. and the police officer who rescued her from the motor home testified about L.G.'s experience.

(Lod. Doc. 2 at 2-5).

# DISCUSSION

## I. Jurisdiction

A person in custody, pursuant to the judgment of a state court, may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Furthermore, the challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

## II. Standard of Review

This Court may entertain a petition for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

### III.  Review of Petitioner's Claims

Petitioner's sole contention is that the trial court's admission of prior uncharged acts violated his rights to due process of the law and a fair trial.

   *A.   Admissibility of Prior Acts to Prove A Common Scheme (Cal. Evid. Code § 1101(b))*

Evidence regarding Petitioner's prior acts against L.G., R.S. and M.M. were admitted by the trial court under California Evidence Code section 1101(b) to show intent, motive, and a common plan, scheme or design. (RT at 48-51).  Petitioner argues that the prior acts were not substantially similar to the charged acts to permit admission of the highly inflammatory and prejudicial testimony under section 1101(b). (Pet. at 7-10).

These claims were presented in an appeal of Petitioner's conviction before the California Court of Appeal.  The appellate court rejected Petitioner's claim in a reasoned decision, holding that the admission of the prior acts were proper under California Evidence Code sections 1101(b) and 1109, respectively, and not precluded by section 352.  (Lod. Doc. 2).  Petitioner raised the same issue in an application for review to the California Supreme Court.  The state supreme court denied the petition without comment on March 29, 2006.  As the California Supreme Court's opinion is summary in nature, this Court looks through that decision and presumes that by its "silent order" denying the petition, the California Supreme Court denied the claims presented for the same reasons stated in the lower court's opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Court of Appeal concluded that Petitioner's claim was without merit, stating that:

> The prosecution introduced evidence of prior incidents of pandering to prove intent, motive and a common design or plan pursuant to section 1101, subdivision (b), which states:
> "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, ... ) other than his or her disposition to commit such an act."
> The section permits the admission of uncharged acts when relevant to establish facts other than a person's character or disposition, such as motive, intent, identity, or common scheme or plan. (People v. Ewoldt (1994) 7 Cal.4th 380, 393, 400; People v. Balcom (1994) 7 Cal.4th 414, 422.)
> The purpose of section 1101 is to prohibit introduction of prior bad acts if

their only relevance is to establish criminal disposition or bad character. If the evidence is relevant to prove an element of the charged crime, or to show a common design or plan, it is admissible. (People v. Ewoldt, supra, 7 Cal.4th at pp. 380, 393, 399.)The similarity required between the uncharged misconduct and the charged offense varies depending on the purpose for which the evidence is offered. When uncharged misconduct is offered to prove intent, "[t]he least degree of similarity (between the uncharged act and the charged offense) is required...." (People v. Ewoldt, supra, 7 Cal.4th at p. 402.)When the issue is intent, the two acts must be "sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' " (Ibid.)Further, each instance of a sufficiently similar prior act tends to add support for a showing of intent to commit the underlying crime. (Ibid.) When uncharged misconduct is offered to prove the existence of a common design or plan, "[a] greater degree of similarity is required[.]" (People v. Ewoldt, supra, 7 Cal.4th at p. 402.)Thus, "[t]o establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual...." (Id. at p. 403.)Further, evidence of prior misconduct " 'committed with persons other than the prosecuting witness ... is admissible to show a common design or plan where the prior offenses (1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness. [Citations.]' " (Id. at p. 397.)

In Ewoldt, the defendant molested his stepdaughters on multiple occasions several years before the charged crime. The defendant's acts were sufficiently similar to show a common design or plan. (People v. Ewoldt, supra, 7 Cal.4th at p. 403.)Here, [Petitioner]'s actions demonstrated a common design or plan. He became involved in a relationship of trust with vulnerable women and used violence to force them to earn money for him as prostitutes. Each act tended to negate [Petitioner]'s contention that they were isolated incidents and bolster support for a sufficient showing of intent to commit similar acts upon C.G.

The existence of a common design or plan is evidenced by common features tending to show the existence of a plan rather than a series of similar independent and spontaneous acts. " '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.'[Citations.]" (People v. Ewoldt, supra, 7 Cal.4th at pp. 402-403.)Thus, the plan revealed need not be distinctive or unusual; it only need support the inference that appellant employed that plan in committing the charged offense. (People v. Kraft (2000) 23 Cal.4th 978, 1031.)

Here, the similarities between the prior acts and the crimes charged shared common features because in each instance, [Petitioner] followed a predictable path of behavior. He began by befriending a woman with kindness and promises of assistance. He consistently chose vulnerable women of limited means as his target. Once he gained their trust, he became more domineering and eventually resorted to physical violence for the purpose of inducing the women to work as prostitutes. Indeed, the persons [Petitioner] chose to victimize were similar to the victim here. R.M. was a former prostitute and drug user, L.G. and R.S. were drug users, and M.M. was very young and vulnerable. Here, C.G. was a former prostitute and drug user. Further, she was living with [Petitioner] and pregnant with his child, placing her in a highly vulnerable position. Because of the similarities, the evidence was highly probative.

(Lod. Doc. 2 at 6-8).

Generally, the admissibility of evidence is a matter of state law, and "it is not the province of

a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the Untied States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(citing 28 U.S.C. § 2241 and Rose v. Hodges, 423 U.S. 19, 21 (1975)(per curiam)); *see also* Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1985).  "[A] federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  Thus, habeas relief is available only where the wrongly admitted evidence renders the trial so fundamentally unfair as to violate due process. Estelle, 502 U.S. at 66-67 (holding that evidence of prior physical injuries suffered by deceased child, admitted under California Evidence Code section 1101(b) to prove intent in prosecution for child's death, did not rise to the level of a due process violation); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  A federal court cannot grant a habeas petition simply because the trial court incorrectly interpreted the state's evidence code in ruling prior acts admissible. Estelle, 502 U.S. at 72.  Furthermore, due process is violated only if no permissible inferences may be drawn from the admitted evidence. Jammal, 926 F.2d at 920.

Evidence admitted under California Evidence Code section 1101, is subject to the restrictions imposed by California Evidence Code section 352.  Section 1101, subdivision (b), permits the admission of evidence which is "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." Cal. Evid. Code § 1101(b).  Section 352, permits the trial judge to exclude evidence where the evidence's probative value is substantially outweighed by its prejudicial effect.

Here, as the California appellate court properly found, the prior acts Petitioner committed against R.S., R.M., M.M., and L.G. were relevant to the crime Petitioner was charged with as, "the similarities between the prior acts and the crimes charged shared common features because in each instance [Petitioner] followed a predictable path of behavior." (Lod. Doc. 2 at 8).  As the trial record

reveals, the testimony of each women[2] illustrated a common scheme/plan that begins with Petitioner befriending these women with promises of assistance or kindness. R.M. testified that he offered her a place to stay under the guise of being a minister. (RT at 236-237). M.M. testified that he offered her a ride to where she needed since she did not have a vehicle. (RT at 283-284). R.S. testified that Petitioner, who came across in the beginning as a nice guy, offered to help her with gas money in exchange for driving him around to collect unpaid debts. (RT at 256). The victim testified to the peaceful beginning of her relationship with Petitioner. (RT at 169).

The choice of " vulnerable women of limited means as his target" also evidenced a common scheme between the prior acts and the charged crime. (Lod. Doc. 2 at 8). The appellate court found that, "the persons [Petitioner] chose to victimize were similar to the victim here." (Id.) M.M. was an 18-19 year old recently out of a group home. (RT at 280-281). R.S. was a prostitute and mother of four children. (RT at 248-249). L.G. was also a former prostitute. (RT at 264). The victim in the charged offense was a former prostitute who was also pregnant and living with Petitioner. (RT at 170-171).

The prior acts were also similar to the charged offense in that, "[o]nce he gained their trust, he became more domineering and eventually resorted to physical violence for the purpose of inducing the women to work as prostitutes." R.M. testified that Petitioner forced her and L.G. to prostitute themselves and when they were unsuccessful in bringing in money, he used physical violence to show his displeasure. (RT at 263-266). M.M. testified that Petitioner took her to an area to "find a trick." (RT at 293). R.S. testified that Petitioner only let her out of his place to prostitute herself and kept the money she made off of such endeavors. (RT at 241-242). The victim in the charged offense, C.G., testified that the arguments preceding Petitioner's spousal abuse and battery centered on her refusal to work as a prostitute. (RT at 170-171). As the evidence was relevant to establishing a common scheme with the charged acts, the prior acts were properly admitted evidence. Consequently, this Court concludes that the state court's determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

---

[2] L.G. did not testify at trial. However, Petitioner's prior acts against L.G. were testified to by C.G. (RT at 179-181) and R.S. (RT at 259-268).

     B.     *Admissibility of Prior Acts to Prove Propensity (Cal. Evid. Code § 1109)*

Petitioner's prior acts against L.G. and R.M. were admitted pursuant to California Evidence Code section 1109. (RT at 46-48). The trial court admitted Petitioner's prior acts of domestic violence against L.G. and R.M., pursuant to California Evidence Code Section 1109. (*See* Lod. Doc. 2). Section 1109 states, in relevant part, that, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Cal. Evid. Code § 1109(a)(1). The appellate court rejected Petitioner's contention that the evidence was inflammatory in finding that the trial court did not abuse its discretion in admitting the propensity evidence. Furthermore, the appellate court found that the admitted evidence was relevant as "prior acts of domestic violence [Petitioner] inflicted upon R.M. shows appellant's likelihood to commit the charged offense." (Lod. Doc. 2 at 13).

This Court's review is confined to the inquiry of whether the state court unreasonably applied clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); Delgado v. Lewis, 223 F.3d at 979-80. The Supreme Court has expressly reserved the question of whether a trial court's admission of propensity evidence may violate the Due Process Clause. Alberni v. McDaniel, 458 F.3d 860, 863-867 (9th Cir. 2006) *cert denied*, 127 S.Ct. 1834 (2007) (citing Estelle, 502 U.S. at 75 N. 5). Therefore, the admission of propensity evidence in violation of a Petitioner's right to due process is not clearly established Federal law and a state court's conclusion, that the admission of propensity evidence does not violate a defendant's right to due process, is neither contrary to nor an unreasonable application of clearly established Federal law. Id. at 866-67; Mejia v. Garcia, 524 F.3d 1036, 1046 (9th Cir. 2008).

**IV.    Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

    (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district

judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:      September 30, 2008             /s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE